# EXHIBIT 2

COLORADO
Department of Labor and Employment
CDLE

Division of Labor Standards and Statistics
633 17th Street, Denver, CO 80202-2107
Fax (303) 318-8400 / www.coloradolaborlaw.gov

November 23, 2020

**By mail to:**
Diversified Builders Incorporated d/b/a DBI
8360 W 48th Avenue.
Wheatridge, CO 80033, United States

Case Number: 20-0027

## NOTICE OF INVESTIGATION

The Division of Labor Standards and Statistics ("Division") in the Colorado Department of Labor and Employment investigates employers for potential violations of Colorado labor statutes and rules based on its authority under Title 8 of the Colorado Revised Statutes and the Direct Investigation Rules (7 CCR 1103-8). The Division has received a credible allegation or suggestion of a systemic violation of Colorado labor law within your organization. The possible violations are listed in Part I, followed by demands for documents, information, and other evidence, including invitations to add optional responses and information, in Part II.

**Your full response is due by December 21, 2020**. Notices, instructions, and guidance are provided in Part II of this Notice, including instructions for requesting an extension, if necessary. This Notice is being sent both via regular mail and electronically to email addresses known to the Division.

Please contact the undersigned if you have any questions. Thank you.

Antonio Anduaga Bocanegra
Bilingual Compliance Investigator
(303) 318-8451
Antonio.anduagabocanegra@state.co.us

---

## I.
## Violations Under Investigation

The Division is investigating whether Diversified Builders Incorporated d/b/a DBI (hereinafter, "DBI" or "employer") committed any of the below-listed violations of the below-listed labor statutes and rules.

(1) Classifying workers as "independent contractors," rather than as "employees," thereby depriving them of the rights of "employees" under Title 8 of the Colorado Revised Statutes.

(2) Failing to pay all earned wages to workers, including but not limited to final wages due upon termination, wages for paid rest periods, and overtime wages.

(3) Failing to provide workers itemized pay statements and notices of their rights required by laws and rules governing wage rights; paid sick days; and whistleblowing and personal protective equipment use during a public health emergency.

The following are citations to key statutes and rules (with hyperlinks for reference where available), under which the Division is investigating the above-listed items.

(A) The Colorado Wage Act, C.R.S. Title 8, Article 4, §§ 8-4-101 *et seq*. (2020), including but not limited to C.R.S. §§ 8-4-101(5) (the applicable definition of "employee"), 8-4-103(1) (the requirement to pay earned wages due and payable at regular pay periods), 8-4-109 (final pay requirements) and 8-4-103(4) (the requirement to provide itemized pay statements in writing to "employees"); and

(B) The Healthy Family and Workplaces Act of 2020 ("HFWA," C.R.S. Title 8, Article 13.3, Part 4), and the Public Health Emergency Whistleblower Act of 2020 ("PHEW," C.R.S. Title 8, Article 14.4), including but not limited to the posting and notice of rights provisions in C.R.S. §§ 8-13.3-408 and 8-14.4-103, respectively, as well as the Colorado Whistleblower, Anti-Retaliation, Non-Interference, and Notice-Giving ("Colorado WARNING") Rules, 7 CCR 1103-11, promulgated under both HFWA and PHEW.

(C) The annual Colorado Overtime and Minimum Pay Standards Order ("COMPS Order," formerly known as the Colorado Minimum Wage Order, "CMWO"), 7 CCR 1103-1, issued at least annually,[1] which details specific rights and responsibilities relevant to this investigation. All applicable Division Rules are available on the Division's website, www.coloradolaborlaw.gov.

If investigatory developments yield an expanded investigation scope, further notice and opportunity to respond will be provided. Please carefully review the cited material above, as it contains important information on relevant legal rights and responsibilities as well as rules applicable to this investigation.

In the course of this investigation, if you believe any documents or information you provide to the Division, or any documents or information the Division provides to you (including but not limited to this Notice of Investigation, any follow-up notices or demands for information, and any determinations by the Division), contain "[t]rade secrets, privileged information, and confidential commercial, financial, geological, or geophysical data" under C.R.S. § 24-72-204(3), you must designate each specific item you believe qualifies. For documents or information you provide to the Division, such designations must be provided to the Division contemporaneously with such documents or information. For document or information demands from the Division, such designations must be provided within twenty days.

---

## II.
## Demands for Documents, Information, and Other Evidence Pursuant to C.R.S. Title 8, Article 1

Pursuant to C.R.S. Title 8, Article 1, including but not limited to §§ 8-1-114 ("employers and employees to furnish information"), -116 ("access to premises"), and -117 ("access to books"), accurate and complete copies of the documents, communications, and other information, and responses to the informational requests described below, are required by **December 21, 2020.**

---

[1] Following is the version applicable during each year relevant to this investigation: CMWO #34 (2018); CMWO #35 (2019); Amended CMWO #35 (1/1/2020 - 3/15/2020); COMPS Order #36 (3/16/20 - 12/31/20); and COMPS Order #37 (2021).

**A.**
**Notices, Instructions, and Guidelines Applicable to the Below Demands**

(1) Unless otherwise noted, each demand is limited to (A) individuals who worked for, or performed labor or services for or on behalf of, I, including all employees and independent contractors, in Colorado, and (B) any events since January 1, 2018, including policies, practices, agreements, or actions in effect during that time, even if they were created and/or adopted before that date.

(2) The terms "document" and/or "written" include content in any readable form, whether handwritten, typed, printed, scanned, on paper or in any electronic form including but not limited to emails, web posts, PDFs, word processing documents, spreadsheets, database entries, or cloud storage content. Items in electronic form are requested to be produced (via secure online transmission or USB drive) in the form in which they are maintained if that form is transmittable and is readable with Microsoft, Adobe, or Google software or applications; other items may be produced on paper.

(3) Should more time be requested to provide a complete response to all items, **a request should be made at least three business days before the deadline**, detailing (A) which items require an extension and the requested length of the proposed extension, and (B) which specific items will be produced by the deadline, with the expectation that responsive items will be produced by the deadline to the maximum extent possible, thereby limiting the extension to the subset of items listed in (A).

(4) If any part of any demand cannot be responded to fully, the obligation remains to respond to the extent possible, with an explanation why the remainder cannot be responded to. If any such reason is a claim of privilege against disclosure recognized by law, the obligation to respond remains, and the response must: (a) expressly make the privilege claim; and (b) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable the Division to assess the claim.

(5) Failure to respond fully or comply with these demands, including providing all responsive documents and information, may result in one-time and/or daily fines (including but not limited to under C.R.S. §§ 8-1-117(2) (not less than $50.00 per day for failure to provide the Division access to documents), 8-1-140(2) (not less than $100.00 per day for failure to comply with lawful duty enjoined, or order issued by, the Division, within the scope of § 8-1-101), 8-4-113(1)(b) ($250.00 for failure to respond to any Division notice to which a response is required), and/or criminal prosecution (including but not limited to under §§ 8-1-114(2), 8-1-116(2)).

(6) It is a criminal offense and/or violation of civil wage law, punishable by fines and/or imprisonment, to (a) retaliate in any way (including to intimidate, threaten, restrain, coerce, blacklist, or in any way discriminate) against any employee who participates in this investigation (C.R.S. § 8-4-120), (b) hinder or obstruct this investigation in any other way, including with an action against any person, whether or not an employee (§ 8-1-116(2)), or (c) in any other way threaten, coerce, or discriminate against any person for the purpose of reprisal, interference, or obstruction as to any actual or anticipated investigation, hearing, complaint, or other process or proceeding relating to any wage claim, right, or rule (COMPS #36 R. 8.5, and statutes cited therein). Further, no employee controls the Division's decisions to initiate or continue direct investigations, so any such attempts to hinder or obstruct this investigation will have no impact.

(7) Preservation of any relevant documentation and evidence relating in any fashion to this

investigation is required by law. (C.R.S. §§ 8-1-114, -116, -117, 8-4-103(4.5).)

(8) Definitions of key terms:

(A) "Document" and/or "written" include content in any readable form, whether handwritten, typed, printed, scanned, on paper or in any electronic form, including but not limited to emails, web posts, PDFs, word processing documents, spreadsheets, database entries, or cloud storage content.

(B) "Labor broker" means any labor recruiter or intermediary from which DBI obtained individual workers who performed labor and/or services for its benefit, and includes both business entities and individuals.

(C) "Worker" or "workers" means any individual(s) (*i.e.*, person(s)) who worked for, or performed labor or services for or on behalf of, DBI including any individuals it classified as either independent contractors or employees.

(D) "Drywall or other construction workers on DBI projects" means those individuals who worked for, or performed drywall or other construction labor or services for, or on behalf of DBI, including any individuals who were classified as employees or independent contractors, and any individuals who were paid and supervised by one of DBI's subcontractors.

(E) "DBI" means Diversified Builders Incorporated d/b/a DBI, and any agents, subsidiaries or affiliates thereof.

**B.**

**<u>Specific Demands for Documents, Information, and Other Evidence</u>**

**Demand #1:** Any document(s) sufficient to show all workers who worked for, or performed labor or services for or on behalf of, DBI since January 1, 2018, regardless of whether those workers were classified as employees or independent contractors. Include each worker's name, date of hire, date of termination/resignation (if applicable), last known home address and (if different) mailing address, telephone number (including cellular telephone numbers), email address (if known), and whether the worker was classified as an employee or an independent contractor. If no existing document(s) suffice to show all of above-listed information, complete the attached Worker Roster.

**Demand #2:** Any and all pay statements issued to all workers who worked for, or performed labor or services for or on behalf of, DBI from January 1, 2018, to the date of this Notice.

**Demand #3**: Any and all copies of cleared checks or other documents reflecting proof of payment to all drywall or other construction workers on DBI projects from January 1, 2018, to the date of this Notice.

**Demand #4**: Any and all (A) written agreements or contracts between DBI and drywall or other construction workers on DBI projects, and (B) policies, handbooks, and rules relating to DBI's workplace, DBI's employment practices, and the tasks those workers are expected to perform. When providing these documents, please specify the date and applicable timeframe, and whether the workers were provided with copies of these documents, including, if applicable, the approximate date this occurred, and include any applicable signatory pages.

**Demand #5:** For all DBI jobs and projects performed on or after January 1, 2018, and for all DBI jobs and projects planned or scheduled to be performed through June of 2021: (A) the address of the project; (B) the date of the project; (C) the name of the project's general contractor; (D) documents reflecting any bids submitted to the general contractor; (E) all written agreements entered into with the general contractor; and (F) a record of all payments received from the general contractor.

**Demand #6:** For all of DBI's jobs and projects performed, in whole or in part on or after January 1, 2018, and for all of DBI's jobs and projects planned or scheduled to be performed through June of 2021: (A) the names, mailing addresses, email addresses, telephone numbers, and points of contact for all labor brokers and any other entity who has supplied DBI with drywall or other construction workers on DBI projects; (B) the addresses of the jobs or projects for which each labor broker supplied labor; (C) proof of payments issued to such labor brokers; and (D) all written agreements between DBI and any such labor brokers.

**Demand #7:** Any and all timesheets, time records, invoices, other proof of tracked work, and documentation of payments for all drywall or other construction workers on DBI projects from January 1, 2018, to the date of this Notice.

**Demand #8:** Describe in detail the nature of DBI's business, including: (A) a description of the type of work it performs and the services it offers paying customers or clients; (B) how it earns revenue; and (C) how it describes itself in advertisements or marketing.

**Demand #9:** Describe in detail, for drywall or other construction workers on DBI projects, (A) the work they performed, including work supervised by DBI's subcontractors; (B) what distinguished those classified as employees (if any) from those classified as contractors (if any). Produce a copy of all job postings or other written descriptions of work or positions covered in this Demand, and copies of any agreements for independent contractor or subcontractor services with any such workers.

**Demand #10:** Describe in detail how DBI obtained the services of drywall or other construction workers on DBI projects, and how DBI learned of their interest in the work, including detailing whether DBI: (A) required a resume or application; (B) required any particular skills or background, and if so, which; (C) conducted an interview; (D) conducted background checking (such as any reference checks, background checks, credit checks, or drug tests); and (E) had any written agreements (whether formal or an informal document such as a letter or email) with workers or with any entity providing their services. Produce copies of any such agreements, any application forms, and any written postings or requests for a prospective worker to produce or consent to any of the above.

**Demand #11:** Describe in detail DBI's pay arrangements for the labor or services of drywall or other construction workers on DBI projects, including: (A) how payments were made by DBI (for example, an hourly wage, a salary, by piecework, by commission, or by the job or contract); (B) how frequently payments were made by DBI (for example, weekly, bi-weekly, monthly, on another periodic basis, or after the completion of a job or contract); (C) whether payments were made to individuals or to entities who then paid the individuals; (D) whether DBI received or required invoices to make payments.

**Demand #12:** Describe in detail: (A) any uniforms, prescribed clothing or gear, supplies, materials, equipment, IDs, or vehicle stickers or signs that were used by drywall or other construction workers on DBI projects; (B) which of the items in Part A (if any) DBI provided or reimbursed the cost of; and (C)

what if anything DBI communicated as to requirements to use the items in Part A. Produce all documents reflecting any such provision, reimbursements, or requirements as to items in Part A.

**Demand #13:** Describe in detail how, and with what frequency, DBI: (A) controlled or directed, or reserved a right to control or direct, the work of drywall or other construction workers on DBI projects; (B) monitored or supervised such work; and (C) reviewed or evaluated such work.

**Demand #14:** Describe in detail: (A) any instructions or training DBI provided to drywall or other construction workers or those workers' supervisors on DBI projects, including any instructions or training provided to supervisors who were employed by DBI's subcontractors and any safety training; and (B) the manner by which such information or training was provided to workers (for example, in-person training, videos, employee handbooks or policies, or instructions sent to workers by email or instant message, conveyed to them in person, given to them over the telephone, etc.). Produce copies of all such documents or videos reflecting any such instruction or training.

**Demand #15:** Describe in detail whether, and to what extent, DBI exercised, or reserved, the right to limit or prohibit work for other individuals or entities, including but not limited to DBI competitors, by drywall or other construction workers who performed work on DBI projects. Produce all documents (whether a formal document, such as a contract, or an informal document, such as a letter or email) reflecting any such limitations or prohibitions.

**Demand #16:** Describe in detail to what extent drywall or other construction workers on DBI projects: (A) could or did have other individuals perform, or assist them in performing, their work – and if so, who paid and supervised those individuals; (B) had their own offices or shops – and if so, whether they were located on the premises of DBI, of DBI customers or clients, or elsewhere; (C) had their own business cards, business websites, business telephone numbers, or advertisements of their services to others than DBI – and if so, produce any such documents so reflecting.

**Demand #17:** Describe in detail to what extent drywall or other construction workers on DBI projects required any licenses, certifications, liability insurance, or workers' compensation coverage for work on DBI projects, and if so, list each such item and state who required, who procured, and who paid for the item. Produce any documents so reflecting.

**Demand #18:** Describe in detail, for all drywall or other construction workers on DBI projects: (A) all benefits they were eligible to receive from DBI, including but not limited to health insurance, paid vacation, sick pay, retirement benefits (for example, a 401(k)/IRA plan or a pension), bonuses, or others; and (B) all expenses that were reimbursed by DBI, including the approximate value of each.

**Demand #19:** Describe in detail the time period for which drywall and other construction workers on DBI projects agreed to work for DBI -- for example, until after a specific project or contract was completed, for a specific period of time, or for an indefinite period of time.

**Demand #20:** Describe in detail the extent to which the work hours and schedules of drywall and other construction workers on DBI projects were set, including: (A) the extent to which DBI determined workers' schedules or work hours on DBI projects, and the extent to which the workers so determined; (B) how workers notified DBI, or any other persons or entities, that they were beginning and finishing their work for the day; (C) how it was decided whether hours past 40 per week were needed; and (D) who determined where workers would perform their work.

**Demand #21:** Describe in detail: (A) the extent to which DBI kept, or required or relied upon other persons or entities to keep, records of the time worked by drywall and other construction workers on DBI projects; and (B) if such records were not maintained or required by DBI, the extent to which drywall and other construction workers were expected or known to record their time, or to submit time records to DBI to receive payment. Produce sample copies of any such time records for each of 2018, 2019, and 2020.

**Demand #22:** Describe in detail the circumstances under which DBI could or did terminate the services of drywall or other construction workers who were performing labor or services on DBI projects, including whether it could terminate such workers for any reason or no reason. Please attach any documentation reflecting termination-related policies, rules, or procedures.

**Demand #23:** Describe in detail any similar work that drywall or other construction workers on DBI projects performed for other individuals or businesses, including whether those workers provided such similar work to other individuals or businesses at the same time they were working for DBI.

**Demand #24:** Detail all facts and reasons that DBI believes support classifying any drywall or other construction workers on DBI projects as independent contractors rather than as employees.

**Demand #25:** Explain all means by which, during the covered period, posters were displayed, and/or notices of rights were provided, under: (A) CMWO Rule 21 (from 2018 through March 15, 2020) and COMPS Order Rule 7.4 (as of March 16, 2020); and (B) HFWA, PHEW, and Rule 4 of the Colorado WARNING Rules. Provide the dates that any and all such posters and/or notices were provided. Indicate the extent to which any aspects of the answers differ between any of the above-listed statutes or rules, or changed at any points during the covered period.

**Demand #26:** List all individuals or entities that have any ownership interest in DBI of any kind, whether partial or full, whether majority or minority, and whether in the form of stock or any other kind of ownership interest. For each, include the following:

**(A)** full name;

**(B)** contact information, including mailing address, home address, phone number(s), and email address(es);

**(C)** percentage of ownership interest in DBI;

**(D)** for any that are an entity rather than an individual, include the information in Parts (A)-(C) for that entity as well (*i.e.*, list the name, contact information, and ownership percentage for all individuals or entities with an ownership interest).

**(E)** for any that are an individual, detail –

**(1)** their title(s) with DBI, such as owner, President, CEO, CFO, Director, or any other title,

**(2)** how often, and in what manner, they –

**(a)** viewed, reviewed, or supervised the work of drywall or other construction workers on DBI projects;

**(b)** viewed, reviewed, or supervised the work of others who directly supervised drywall or other construction workers on DBI projects.

**(3)** the nature and extent of their involvement in --

**(a)** hiring, firing, evaluating performance, or disciplining drywall or other construction workers on DBI projects,

**(b)** setting (alone or with others), or informing others at DBI, of criteria for, hiring, firing, evaluating performance, or disciplining drywall or other construction workers on DBI projects,

**(c)** establishing or enforcing (alone or with others) work policies or rules for drywall or other construction workers on DBI projects, including instructing managers or supervisors as to such matters,

**(d)** setting (alone or with others) the compensation for individual drywall or other construction workers on DBI projects,

**(e)** setting (alone or with others) overall compensation budgets for DBI, including monitoring or approving payroll, approving pay increases or decreases, signing payroll checks, and fielding questions or concerns from workers about pay practices,

**(f)** setting (alone or with others) the work schedules of individual drywall or other construction workers on DBI projects,

**(g)** setting (alone or with others) overall schedules, collectively (not by individual worker), for work by drywall or other construction workers on DBI projects,

**(h)** maintaining, reviewing, or auditing DBI records as to drywall or other construction workers on DBI projects, including but not limited to personnel files or payroll records,

**(i)** making financial or operational decisions for DBI (alone or with others), including but not limited to overseeing cash management or accounting, signing loans on behalf of DBI (such as to buy equipment, expand the business, cover payroll, etc.), and

**(j)** deciding (alone or with others) that drywall or other construction workers on DBI projects are to be classified as independent contractors, rather than employees;

**(F)** Produce documents sufficient to reflect the information in Parts (A)-(E).

**Demand #27 -- Optional**: Explain whether, why, and to what extent any of the above-listed violations of any of the above-listed statutes or rules were committed. To the extent that you believe any violations occurred, explain the dates, the reasons for the violations, any mitigating circumstances, and the dates and details of any remedial actions taken.

**Demand #28 -- Optional**: The Division is willing to interview a DBI representative on any or all of the above topics at a mutually convenient time, if so desired by DBI. Such an interview will not replace, delay, or absolve DBI of its obligation to respond to the above items. Declining to provide an interview will not be held against DBI in this investigation.

# Worker Roster

*Instructions: If no existing documents show all worker information in Demand #1, complete this Worker Roster. You may add on as many copies of this page as you need, or you may submit a printed version you create with the header "Worker Roster," the below column headers, and all worker information under the column headers. Alternately, you may handwrite on copies of this page or on your own page with the same header and column headers. If we deem any handwriting not completely legible, we will require re-submission.*

| Worker Name | Title or Position | IC Or EE | Hire Date | Separation Date | Last Known Home Address & (If Different) Mailing Address | Last Known Phone Number | Last Known Email Address |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |