# EXHIBIT 5

COLORADO
Department of Labor and Employment
Division of Labor Standards and Statistics
707 17th Street, Denver, CO 80202
303-318-8441 | www.ColoradoLaborLaw.gov | www.LeyesLaboralesDeColorado.gov

July 16, 2026

Diversified Builders Incorporated
8360 W 48th Avenue
Wheat Ridge, CO 80033

**Direct Investigation #20-0027: Diversified Builders Incorporated**

## Second Notice of Expanded Investigation

The DI Unit issues this Notice of Expanded Investigation to DBI.

The Division expands the temporal scope of this investigation time period through July 16, 2027. The investigatory time period, sometimes referred to in the Division's documents as the "Covered Period" is now **January 1, 2018 to July 16, 2026**. The expanded time period applies to the same violations identified in the original NOI.

Because the Division is expanding the scope of the investigation, DBI must update its responses to the demands propounded in the original NOI. In addition, the Division issues additional demands:

**Demand #29.** A detailed explanation of how each measure in the Compliance Order section of the Citation has been effectuated, including but not limited to the following matters:

a. The process by which the employer reviewed worker classifications, a list of any misclassifications found, and any actions to remedy such misclassifications.

b. How paid sick leave has been provided and communicated to employees, including all leave policies and communications, and a detailed description of the amounts, conditions, and permitted uses of sick leave provided.

c. Any changes to rest and meal periods for employees, including how these changes were implemented, communicated to employees, and documented through distributed policies.

d. Identification of the employer's workweek, defined as any consecutive seven-day period starting with the same calendar day and hour each week. A workweek is a fixed and recurring period of 168 hours, consisting of seven consecutive 24-hour periods.

e. Identification of the employer's workday, defined as a consecutive 24 hour period.

f. A description of how the employer is tracking time worked and ensuring correct payment for all employees including ensuring:

   i. for all piece rate employees, the payment of at least minimum wage per hour for all hours worked;

   ii. payment of the applicable minimum wage; and

iii. payment of overtime premium for all hours worked in excess of 40 hours per workweek, 12 hours per workday, or 12 consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages.

g. Information regarding the posting of the COMPS Order and HFWA/PHEW posters including:

i. where the posters are posted (provide addresses as well as a description of the location(s) detailing employee access to the location(s));

ii. when the posters were posted (provide date(s)); and

iii. photographic evidence of posting.

h. When the COMPS Order or poster was added to the employee handbook, and how this handbook was provided to employees. Response must include a copy of the handbook.

i. How and when individual written notice of HFWA/PHEW rights was provided to employees.

**Demand #30.** All documents constituting or relating to the effectuation of all compliance measures described above, including but not limited to:

a. all policies and practices drafted and implemented pursuant to the Compliance Orders;

b. all communications to or from employees as to policies and practices pursuant to the Compliance Orders;

c. the most recent available pay statement for all workers performing, since the date of this Citation, drywall and/or framing work similar to that of the Covered Workers; and

d. notification to all employees, whether in writing or electronically:

i. of HFWA paid leave rights and responsibilities, through the written posting and notice distribution to each employee required by C.R.S. § 8-13.3-408 and WARNING Rules 4;

ii. of PHEW rights, through the posting required by C.R.S. § 8-14.4-103(1) and WARNING Rule 4; and

iii. of wage and hour rights and responsibilities, through the inclusion of the COMPS Order or poster in employee handbooks, manuals, or policies per COMPS Order Rule 7.4.2.

**Demand #31.** Describe all changes in policies and practices after the date of the Citation and produce all related documents, including current copies of all policies.

**Demand #32.** Provide the following information:

a. a list of all real estate owned in whole or in part by the employer, including the address; nature of ownership (wholly owned, jointly owned with percent ownership, etc.); estimated value of the property; and the amount

and holder of any outstanding debts secured by the property, including mortgages and lines of credit;

b. a list of all vehicles owned in whole or in part by the employer, including the make, model, and year of the vehicle; nature of ownership (wholly owned, jointly owned with percent ownership, etc.); estimated value; and the amount and holder of any outstanding debts secured by the property, including purchase loans;

c. a list of all other physical property owned in whole or in part by the employer, purchased for or with a current estimated value of $1,000.00 or more, including a description of the property; nature of ownership (wholly owned, jointly owned with percent ownership, etc.); estimated value; and the amount and holder of any outstanding debts secured by the property;

d. a list of all ownership interest held by the employer in any business enterprise other than the employer, including all partnerships, corporations, or LLCs, including the name of the enterprise, if any; a description of the enterprise (services performed, products sold, etc.); nature of ownership (wholly owned, jointly owned with percent ownership, etc.); annual gross receipts and expenses for the enterprise for each year from 2019 to the present; a description and estimated value of all property owned by the enterprise; and the amount and holder of any outstanding debts owed by the enterprise;

e. a list of all financial institutions, including banks, savings and loan associations, credit unions, and brokerage houses, where the employer is named on an account or has signature authority, including the name, address, and telephone number of the institution; the account number; the current balance of each account; and account statements for the three most recent months;

f. a list of every person or entity that owes money to the employer in excess of $500.00, including the name, address, and phone number of the debtor; the amount owed; the terms of repayment, including the amount and dates payments are due; and the reason the moneys are owed;

g. a list of all employment and contracts providing income to the employer from January 1, 2022, to the present, including the parties to the contract; a description of the contract (work or services to be performed, time period, etc.); all income the contract has generated from January 1, 2022, to the present; and income the contract is expected to generate in the future;

h. a list of all general contractors for which either employer has had contracts, or has performed, procured labor for, or billed or been paid for, drywall or framing, since January 1, 2022, including the name of the contractor; the date of initial contracting; whether the contract is ongoing; and receipts to date from the contractor;

i. a list of all property with an estimated value of $5,000 or more, including ownership interest in any real property, funds or accounts containing funds, or business entities, transferred by the employer since November 23, 2020, including the name, address, and phone number of the transferee; a

description of the property; the estimated value of the property; and the reason for the transfer; and

j. any bankruptcy proceedings initiated by the employer from November 23, 2020, to the present.

**Your complete responses to all demands are due August 13, 2026.**

Further, the current version of the Direct Investigation Rules, 7 CCR 1103-8, will apply to the remainder of this investigation.

Attachment A is a separate document attached to this Notice. Attachment A is an Investigation Management Order (often referred to as an "IMO"). The IMO provides a general overview of the Division's investigation process and what you and your business can expect moving forward. The IMO also contains specific definitions, rules, and procedures that will govern the investigation.

STATE · OF · COLORADO
NIL SINE NUMINE
1876

Division of Labor Standards and Statistics
Colorado Department of Labor and Employment

COLORADO
Department of Labor and Employment

**Division of Labor Standards and Statistics**
707 17th Street, Denver, CO 80202
303-318-8441 | www.ColoradoLaborLaw.gov | www.LeyesLaboralesDeColorado.gov

July 16, 2026

Diversified Builders Incorporated
8360 W 48th Avenue
Wheat Ridge, CO 80033

**Direct Investigation #20-0027: Diversified Builders Incorporated**

# Notice of Expanded Investigation
# Attachment A: Investigation Management Order

This Investigation Management Order ("IMO") provides important and binding information regarding this investigation. Part I provides an overview of the stages of an investigation.

Part II provides standing Orders (or rules) that will apply during the entire investigation.[1] **You must follow the Orders in this IMO and failure to do so may result in fines.**[2]

It is the Division's desire to make the investigative process accessible, clear, and understandable. Please do not hesitate to contact the Compliance Investigator assigned to your case if you have any questions or concerns.

## Part I: DI Unit Investigation Overview

The Division's Direct Investigation Unit ("DI Unit") is conducting this investigation. This section summarizes the stages that may occur during a DI Unit investigation.

### Scope & Duration of the Investigation

Investigations conducted by the DI Unit are larger in scope and more time consuming than investigations into claims filed by individual employees. This is because DI Unit investigations are **employer-wide** and examine potential systemic violations of labor laws. A DI Unit investigation will include all, or a large group, of your employees, and the DI Unit may order that back wages, penalties, or fines be paid based on the treatment of all or some of your employees.

### Stages of an Investigation

- **Notice of Investigation.** You have received a Notice of Investigation ("NOI"). The NOI begins an investigation by notifying the employer that it is under investigation and defining the scope of the investigation. The NOI usually includes numbered demands[3]

[1] These rules are *in addition to* the Direct Investigations Rules, 7 CCR 1103-8, and other applicable Division rules, and should be read in harmony with those rules

[2] *See* Direct Investigation Rule 3.5 ("During a direct investigation, the Division may issue directives, instructions, protocols, and procedures to an employer and witnesses, and may establish protocols or procedures governing an investigation. Such directives, instructions, protocols, and procedures are presumed to be "lawful order[s]" within the meaning of C.R.S. § 8-1-140(2). Failure to comply with a lawful order may subject the noncompliant individual or entity to fines. *Id.*").

[3] Because the law authorizes the Division to obtain this information and imposes consequences on employers who do not provide this information, these are called "demands" and not "requests." The DI

for the Employer to provide documents and information to the DI Unit.

- **Information Gathering.** The DI Unit's efforts to gather documents and information is continuous and may overlap with other stages. The DI Unit gathers information from multiple sources, including:
  - **Employer Responses** to DI Unit Demands for documents and information, which can appear in several types of documents, including the original NOI. The DI Unit may also interview employer personnel who provide information on behalf of the company.
  - **Employee Information.** The DI Unit receives information from workers in a variety of ways, including interviews, Demands, and/or voluntary submissions.
  - **Third-party documents and information** produced by people and/or entities other than the target employer and its employees.
  - **Site visits** to the employer's worksite where the Division may interview workers, take photographs, and inspect documents.

- **Notice of Incomplete Response**· If the employer's responses to DI Unit Demands are incomplete, the DI Unit may issue a Notice of Incomplete Response ("NOIR"). An NOIR identifies what the Employer must still provide and a deadline to comply. Depending on the volume and complexity of information produced by the employer, an NOIR may be issued several months after the employer's response.

- **Notice of Expanded Investigation.** During the investigation, the DI Unit may expand the investigation to include additional potential violations or different time periods. This most often occurs where the DI Unit discovered evidence that a legal violation occurred that was not within the scope of the NOI. In this situation, the DI Unit will issue a document called a "Notice of Expanded Investigation ("NOEI")." An NOEI gives you notice of any new violations under investigation and may contain new demands for documents and/or information related to the new potential violations. An NOEI may also expand the time period covered by the investigation and can be issued at any stage of the investigation. The employer will have the same opportunity to respond to these new potential violations.

- **Notice of Evidence and opportunity to respond.** At various points during an investigation, employers may receive a document called a "Notice of Evidence" ("NOE"). Attached to the NOE is evidence gathered by the DI Unit that was not provided by the employer. The purpose of the NOE is to provide the employer access to all information and documents gathered during the investigation and a fair opportunity to respond to all evidence gathered in the investigation. The employer may respond to the NOE with a written statement explaining any arguments related to the investigation and may provide any additional evidence. An employer may not receive an NOE if the investigation is based entirely on evidence produced by the employer.

- **Determination.** After the employer has had an opportunity to respond to the NOE, the DI Unit decides whether the employer violated laws within the Division's authority. If a violation is found, the DI Unit will issue a Determination stating the legal violations found, and may contain binding orders, including the payment of fines, penalties, and wages, and orders to cease ongoing violations. If no violation is found, the DI Unit will close the investigation and notify the employer by sending a closing letter.

- **Bifurcation.** The DI Unit may break up an investigation into multiple phases. If it does, the DI Unit will issue notice to the employer explaining the basis and identifying the

---

Unit is authorized to issue fines to employers and third parties who do not comply with the requirements of information-gathering tools used by the DI Unit.

multiple phases. This notice may be included in other documents, such as a Phase 1 Determination. At the conclusion of each phase, the DI Unit may issue a partial Determination limited to certain issues in an investigation.

- **Appeal.** Employers are entitled to appeal a Determination to a Division Hearing Officer. A Hearing Officer's decision may also be appealed to the Colorado court system.

## Part II: Orders

The following Orders explain what you can and must do in your interactions with the DI Unit during the investigation and when responding to Division demands. These rules apply throughout the DI Unit's investigation, including to each Notice or Demand the DI Unit issues, unless otherwise specified in those documents. **These are binding Orders of the DI Unit. If you do not follow these rules, you may be fined or evidence you wish the DI Unit to consider may not be considered (exclusion of evidence).**

### Order 1. Definitions

**1.1.** The terms "the employer" and "you" are defined as Diversified Builders Incorporated.

**1.2.** The terms "document," "communication," and/or "written" include content in any readable form. Such content may be handwritten, typed, printed, scanned, on paper, or in any electronic form. Electronic forms may include but are not limited to: emails, web posts, PDFs, word processing documents, spreadsheets, database entries, AI chat logs, or cloud storage content.

**1.3.** "Covered period" means the dates the investigation covers. This date range of the covered period is explicitly identified in the NOEI, but may expand during the investigation. Always check the most recent Division notice for the relevant covered period.

### Order 2. Communications

**2.1.** **Employer's Responsibility to Maintain Current Contact Information.** "The employer is responsible for ensuring the Division has its current contact information." Direct Investigations Rule 3.6. The DI Unit sends binding orders, demands, and notices via email. The employer must provide a current email address to the DI Unit and shall promptly notify the DI Unit if their email address or point of contact changes. If an employer does not have a current email address, they must promptly notify the DI Unit and provide their preferred alternative form of communication.

**2.2.** **Employer's Responsibility to Monitor Their Email.** The Division sends binding orders, demands, and notices via email. It is the employer's responsibility to monitor the email address(es) provided to the Division for the duration of the investigation. The Division considers all correspondence sent to a verified employer email address received, and may not extend deadlines or otherwise accommodate an employer that does not receive correspondence due to a failure to update or monitor its email address(es).

## Order 3. Preservation and Production

3.1. **Preservation of evidence.** You are required by law to keep copies of any relevant evidence relating in any way to this investigation. (*See* C.R.S. § 8-4-103(4.5); Colo. WARNING R. 3.3.5, 7 CCR 1103-11.). "Relevant evidence" is a broad concept that includes communications of any kind, documents, records, notes, video and/or audio footage, AI chat logs, and any other data, information, or documents that relate to the violations under investigation. The responsibility to preserve evidence also requires you to take steps to prevent the destruction or disposal of documents or other evidence. For example, if you have relevant information such as payroll records or emails that are automatically deleted after a certain period of time, you must take action to stop automatic deletions.

3.2. **Clarification of Demands.** If you believe any demand is unclear or requires additional information to respond fully, you must promptly contact the Division to request clarification or additional information. You should contact the Division before producing your responses, and before making an extension request. **Extension requests will not be granted if the request is due to the employer's failure to timely request clarification or additional information.**

3.3. **Scope of Demands.** Unless otherwise noted, **each demand is limited to information and documents relevant to (A) workers in Colorado and (B) the covered period.** This means that you must provide to the Division all policies, practices, agreements, decisions, or actions in effect in Colorado during any portion of the covered period, even if they were written or enacted before that time period and/or outside Colorado. Further, the scope includes documents that may be in the possession of a third party but are obtainable at your direction, that you have the practical authority or ability to obtain, that you instructed a third party to maintain, or that you rely on or contend you rely on to comply with Colorado labor law.

3.4. **Format of Document Productions. All documents should be produced in an electronically-readable format if possible** — e.g., spreadsheets should be produced in a .xlsx or .csv format if available in that format, and documents that are stored as readable PDFs should be produced as such, not as scans of the hard-copy document. If files cannot be produced in an electronic-readable or spreadsheet format, you must identify the native file format in which the records are stored. If production of a document in native format is burdensome or otherwise difficult, contact the investigator assigned to your case ***before*** the deadline to respond to discuss what form of production is acceptable.

3.5. **Identify and Describe Changes During the Covered Period.** If your response to any demand includes a policy, practice, agreement, decision, or course of action that changed at any time during the covered period, explain in detail the timing and nature of any changes.

For example, if, during the covered period, an Employer changed their sick leave policy during the covered period, the Employer should describe the nature and timing of those changes—*i.e.*, "Before June of 2022, the Employer required Employees to submit a doctor's note to be approved for sick leave. On June 15, 2022, the employer removed this requirement and since this date has not required Employees to submit a doctor's not to be approved for sick leave."

3.6. **Organization of Responses.** For all documents produced, **identify the Demand(s) to which the document(s) are responsive**. If possible, documents

should be Bates stamped or otherwise have consecutive page numbering.

**3.7. Provide Key or Necessary Context for Documents.** To the extent the nature, effective dates, or other information needed to understand documents produced is not within the documents themselves, you must provide this information in a written response.

**3.8. Duty to Supplement Responses.** After you have responded to a demand for documents and/or information, you must supplement or correct your response in a timely manner if you learn that your original response was incomplete or incorrect, or if you discover additional documents and/or information that are responsive to a demand.

**3.9. Sworn Verification of Responses.** Your responses to the Demands below must be verified under penalty of perjury by (a) the chief executive of the employer, (b) an owner of 50% or more of the employer, or (c) another employer official with authority to make binding statements and commitments on behalf of the employer.

This verification must state (a) that the respondent has carefully read and understood these instructions and the Demands, and sought clarification of any Demands as needed in accordance with these instructions; (b) that the employer has made complete production of all responsive documents, or explained the reasons for not producing these documents, in accordance with these instructions; and (c) all written responses are complete and accurate, including by responding to each part of multi-part Demands. You may copy and use an editable unsworn declaration template available at: https://tinyurl.com/3k5ffwdj.

## Order 4. Deadlines

**4.1. Deadline calculations.** In calculating a deadline that is based on days before or after a certain date, the Division does not include the day from which the designated period begins to run. For example, if something is due three days before a Friday, the deadline is the preceding Tuesday (Thursday + Wednesday + Tuesday = three days).

If a deadline falls on a Saturday, Sunday, or legal holiday, the deadline automatically extends to include the next day that is not a Saturday, Sunday, or legal holiday.

**4.2. Extensions. Any request for a deadline extension must be made at least three *business* days before the applicable deadline**, detailing (A) which items require an extension and the requested extension length, (B) the justification for the extension, and (C) which items will be produced by the original deadline. The Division's expectation is that items will be produced by the original deadline to the maximum extent possible, limiting the extension to items listed in (A). All extension requests **must be made in writing.**

## Order 5. Objections and requests to modify production requirements

**5.1. Designation of Documents Containing Confidential Information.** Our Division is subject to the Colorado Open Records Act ("CORA"), which requires disclosure (upon request) of all documents in our possession unless a specific CORA exception applies. During this investigation, you must identify any confidential documents or information you believe contain "[t]rade secrets,

privileged information, and confidential commercial, financial, geological, or geophysical data" under C.R.S. § 24-72-204(3)(a)(IV). Materials that are not identified as confidential, or that we determine after review do not qualify as confidential under § 24-72-204(3)(a)(IV), may be disclosed under CORA.

**5.1.1.** **What to identify as confidential**: You must identify any confidential documents or information you provide to the Division, and any confidential documents or information the Division provides to you. This includes this Notice and any other notices, demands for documents or information, documents or information, warnings, and determinations. Our Division cannot provide legal advice about what constitutes a trade secret or proprietary or privileged information under Colorado law. If you have questions about what to identify as confidential, you may wish to contact a private attorney.

**5.1.2.** **How to identify documents as confidential:** You must identify each specific item you believe qualifies, and explain in detail why it qualifies, using the first sheet of the Division's approved form, available by request to the investigator in this case. The Division cannot deny public access to documents or information based on a designation as "confidential" without more, or any other designation that lacks a clear and specific explanation of the basis for the designation that conforms to the applicable legal standard. A blanket confidential designation of all documents does not satisfy this designation requirement.

**5.1.3.** **When to designate:** For documents or information from the Division, designations must be made within twenty days of your receipt of the document. For documents or information you provide to the Division, designation must be made when provided to the Division.

**5.2.** **Privileged Documents and Information.** To the extent you claim that any responsive documents, communications, or information are privileged, please (a) indicate in the second sheet of the Division-approved form the nature of the claim of privilege (e.g. attorney-client, work product); (b) identify any individuals involved in the creation of the privileged document, information, or communication (e.g. the sender and recipient of a privileged email, the author of privileged notes); and (c) describe the nature of the information, documents, or communications withheld.

**5.3.** **Legal Objections.** If you have a legal objection to providing documents or information, and are withholding documents or information based on a legal objection, you must do the following in your response:

(a) Describe, with specificity, the basis for your objection. You must provide sufficient detail for the Division to consider the validity of the objection and whether to revise or withdraw its demand;
(b) Describe in detail all documents and/or information being withheld. To provide this information, you may use the blank spreadsheet hyperlinked here https://tinyurl.com/6kf9rmta.
(c) If there are multiple categories of responsive documents or information, you must specify which objection applies to what category of documents and information; and
(d) Partially respond by producing all documents and/or information you do not object to producing.

**The Division will consider it a failure to produce documents and/or**

**information if you assert a boilerplate[4] objection such as "unduly burdensome," "overbroad," or "irrelevant" without further explanation.**

5.4. **Objections Based on the Burden of Responding.** Where an objection sufficiently explains the nature of the burden imposed by responding to a demand, the Division is willing to consider refining its Demand and/or accepting alternative means of production. To sufficiently assert an objection based on the burden imposed by fully responding, you must additionally:

(a) explain the nature of the burden imposed by fully responding, including the estimated time and cost required to fully respond and the volume of responsive documents and/or information;
(b) identify what, if any, responsive documents and/or information can be provided without significant burden; and
(c) provide a proposed alternative method of providing responsive documents and/or information to the Division.

Providing this information will facilitate an efficient and productive discussion of how the Division might proceed.

## Order 6. Failure to Respond and Retaliation

6.1. **Consequences for Failure to Respond:**

6.1.1. **Failure to respond fully or to comply with the Division's document and/or information Demands by the due date, including providing all responsive documents and information, may result in penalties and fines of at least $50.00 per day** (C.R.S. §§ 8-1-117(2) (minimum $50.00 per day for failure to provide the Division access to documents), 8-1-140(2) (minimum $100.00 per day for failure to comply with lawful duty enjoined, or order issued by, the Division, within the scope of C.R.S. § 8-1-101); **(C.R.S. §§ 8-1-114(2), 116(2)).**

6.1.2. **Failure to produce relevant documents or other evidence available to you during this investigation** is considered non-compliance with the Division's Order(s); a violation of Division rules including Direct Investigation, 7 CCR 1103-8, Rule 3.7 and Wage Protection Rules, 7 CCR 1103-7, Rule 4.4.3; and a violation Division-enforced statutes including C.R.S. §§ 8-1-117 and -140. Such failure **may result in exclusion of this evidence during this investigation OR including during a later appeal pursuant to Direct Investigation Rule 6.5.**

6.2. **Retaliation and Interference Strictly Prohibited.** It is a criminal offense and/or violation of civil wage law, punishable by fines and/or imprisonment, to (a) retaliate in any way (including to intimidate, threaten, restrain, coerce, blacklist, or in any way discriminate) against any employee participating in this investigation (C.R.S. § 8-4-120), (b) hinder or obstruct this investigation in any way, including with an action against any person, whether or not an employee (§ 8-1-116(2)), (c) interfere with or punish for participating in or assisting, in any manner, an investigation, proceeding, or hearing under HFWA (§ 8-13.3-402(10)) or PHEW (§ 8-14.4-102), or (d) in any other way threaten, coerce, or discriminate against any person for the purpose of reprisal,

[4] "Boilerplate" is a legal term to describe a legal objection merely states the type of objection with basic language and does not specify the factual and/or legal basis for the objection, and fails to identify what, if any, documents or information are being withheld.

interference, or obstruction as to any actual or anticipated investigation, hearing, complaint, or other process or proceeding relating to any wage claim, right, or rule (COMPS R. 8.5, and statutes cited therein). *See also* Direct Investigations Rule 8.1.1 (prohibiting interference with Division investigations). Further, no employee controls the Division's decisions to initiate or continue direct investigations, so any such attempts to hinder or obstruct this investigation will have no impact.